**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

SANDRA MILLER,             )
                                  )
          Plaintiff,      )
                                  )
v.                             )     Case No. CIV-15-1273-M
                                  )
CAROLYN W. COLVIN, Acting    )
Commissioner of the Social Security  )
Administration,            )
                                  )
          Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff, Sandra Miller, seeks judicial review of the Social Security Administration's denial of supplemental security income benefits (SSI). This matter has been referred by United States District Judge Vicki Miles-LaGrange for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural Background

On September 21, 2012, Plaintiff protectively filed an application for SSI. *See* Administrative Record (AR) [Doc. No. 9], 9. She alleged a disability beginning April 1, 2011, later amended to August 1, 2012, caused by depression, lupus, hypertension, migraines, hypothyroidism, fibromyalgia, peripheral vascular disease, neuropathy, hyperlipidemia and gallbladder problems. *Id*. After the Social Security Administration (SSA) denied the application initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). *Id*. Following the hearing, the ALJ issued an unfavorable decision dated July 28, 2014. AR 9-19. The Appeals Council denied Plaintiff's request for review. AR 1-4. Thus, the

decision of the ALJ became the final decision of the Commissioner and is the subject of this judicial review.

## II.   <u>The ALJ's Decision</u>

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 12.

At step two, the ALJ determined Plaintiff's severe impairments include degenerative disc disease, fibromyalgia, atherosclerotic peripheral vascular disease (ASPVD), and major depression. AR 12. At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding she could perform light work with only occasional stooping, kneeling or crouching. Because of Plaintiff's depression, the ALJ determined Plaintiff could understand, remember, and perform only simple work with SVP 2 or lower. AR 15.

At step four, based on the testimony of a vocational expert (VE), the ALJ found Plaintiff incapable of performing her past relevant work as habilitation training specialist, dietary aide, or machinist. AR 17.

At step five, the ALJ again relied on the testimony of the VE to determine Plaintiff could perform other jobs existing in significant numbers in the national economy including office helper, laundry worker and inventory reviewer. AR 18. Thus, at step five of the sequential evaluation, the ALJ determined Plaintiff was not disabled.

## III.    Issues Presented for Judicial Review

Plaintiff contends the ALJ's RFC assessment was insufficient because it did not include limitations from headaches and urinary incontinence.[1]  She further contends the RFC did not adequately account for unspecified limitations from degenerative disc disease, fibromyalgia, and ASPVD, impairments the ALJ did find to be severe.  Plaintiff also challenges the ALJ's mental RFC limiting her to "simple work" because of her depression.  According to Plaintiff, such a limitation does not adequately take into account the "moderate" limitations in concentration, persistence or pace the ALJ assessed at step three when he was considering whether Plaintiff's depression met the "B criteria" for a listed affective disorder.

## IV.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).  The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not

---

[1] The ALJ determined there was insufficient objective medical evidence to establish the presence of migraine headaches or urinary incontinence.  AR 13.

reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.   Analysis

To be entitled to SSI, Plaintiff must demonstrate she was disabled between September 21, 2012, the date she protectively filed her application for SSI, and July 28, 2014, the date of the ALJ's unfavorable decision. *See* 20 C.F.R. §§ 416.330, 416.335. As the Commissioner notes, most of Plaintiff's medical records predate the relevant time period. Moreover, the medical records contain no opinions from Plaintiff's treating physicians as to the severity of any impairment or as to any resulting limitations.

### A.   The ALJ's Physical RFC Determination

#### 1.   Migraine Headaches

The ALJ found insufficient objective medical evidence to support Plaintiff's allegation of severe migraine headaches. This finding is supported by substantial evidence in the record. To refute this finding, Plaintiff relies on remote, episodic medical records documenting physician and emergency room visits during which Plaintiff complained of and was treated for severe headaches. The most recent record regarding headaches is a letter dated August 5, 2011, signed by Plaintiff's treating physician, Heather R. Lynch, M.D.. AR 393. The letter is addressed "To Whom It May Concern." It lists Plaintiff's various diagnoses: "Hypertension, Fibromyalgia, Vitamin D Deficiency, Migraine headaches, Hypothyroidism, Hyperlipidemia, Chronic Cholecystitis and GERD." *Id.* Dr. Lynch also mentions "Peripheral Neuropathy of undetermined origin," "inflammatory Polyarthritis of undermined origin" and Peripheral Vascular Disease." *Id.* The letter contains no opinions regarding the severity of Plaintiff's impairments, nor does it suggest any functional limitations resulting from any of the diagnoses.

The same is true of the medical records generated by Dr. James E. Duncan, a neurologist to whom Dr. Lynch referred Plaintiff. AR 379-406. Dr. Duncan stated an MRI of Plaintiff's brain showed some possible displacement of the pituitary gland, but no evidence of mass or tumor. AR 380. There is no indication in the record that the placement of the pituitary gland is linked to migraine headaches. After Dr. Duncan prescribed Topamax, Plaintiff reported her headaches were somewhat better. AR 387. Dr. Duncan's medical records contain no opinions as to the severity of Plaintiff's headaches or as to any functional limitations resulting from Plaintiff's headaches.

Plaintiff attempts to link a diagnosis of conjunctivitis in her right eye, documented in a medical record dated January 3, 2012, to her allegation of blurry vision resulting from headaches. AR 252-254. But that medical record includes the statement, "Negative for headache," indicating no link between alleged blurry vision and headaches. AR 252. Moreover, the medical record states Plaintiff's eye problem emanated from her having gotten "grass in eye." AR 254. Accordingly, there is no objective medical evidence to support Plaintiff's claim that her headaches are linked to her alleged blurry vision.

Even though Plaintiff received medical treatment for headaches from time to time during the two years preceding her application for SSI, the medical record does not support findings of functional limitations from headaches. As there is no evidence of functional limitations from headaches in the medical record, the ALJ did not err in failing to include any functional limitations from headaches in the RFC.

### 2.      Urinary Incontinence

The ALJ also found insufficient objective medical evidence to support Plaintiff's allegation of urinary incontinence as a severe impairment. AR 13. The ALJ noted a medical

record stating Plaintiff's urinary frequency resolved with medication "within a period of less than twelve months." *Id.* Plaintiff attempts to refute the ALJ's finding by arguing her frequent urinary tract infections constitute a "chronic" condition. [Doc. No. 12] at 4. In support of her argument, Plaintiff points to one medical record dated April 18, 2014, generated by Dr. Larry Ruffin. It appears this visit was a routine follow up appointment. Dr. Ruffin recorded Plaintiff's statements regarding a recent emergency room visit for "numbness" during which she was incidentally diagnosed with a urinary tract infection. Plaintiff apparently told Dr. Ruffin she had had chronic urinary tract infections for eleven years and had been placed on antibiotics twenty-five times. AR 452. Dr. Ruffin did not offer an opinion regarding the severity of Plaintiff's urinary infections or the existence of resulting functional limitations.

What is more, there is no evidence in the record as to the severity or limiting effects of Plaintiff's alleged urinary tract infections or the resulting intermittent urinary incontinence mentioned in some of the medical records. In fact, the record supports the ALJ's finding that Plaintiff's urinary tract infections resolved with antibiotics in fewer than twelve months. Moreover, much of the medical evidence indicates Plaintiff frequently denied urinary incontinence, even when she was seeking treatment for urinary tract infections. Plaintiff was treated for a urinary tract infection in March 2012, but there is no reference to incontinence. AR 631. Plaintiff denied incontinence in September 2012, AR 647, as well as at her consultative examination in December 2012. AR 421. Thus, the ALJ's failure to include limitations in the RFC from Plaintiff's alleged urinary incontinence is not in error, as the objective medical evidence does not support a finding of a medically determinable impairment resulting in urinary incontinence.

### 3. ASPVD

According to Plaintiff, the ALJ erred in failing to include functional limitations from ASPVD in the physical RFC assessment. Plaintiff complained of leg weakness and numbness during 2011. Her subjective symptoms led to a series of medical tests. Dr. Duncan performed an electromyogram (EMG) and a nerve conduction study of Plaintiff's lower extremities. The results of the testing were normal. AR 290.

The report of a February 14, 2011, bilateral lower extremity arterial ultrasound indicated a 50% to 75% stenosis on the left and a 30% to 49% stenosis on the right. AR 285. Based on these results, Plaintiff relies on her own medical opinion stating, "Light work is contraindicated with lower extremity venous insufficiency with 50-75% stenosis on the left and 30-49% stenosis on the right in the proximal arteries." [Doc. No. 12] at 6. Plaintiff's conclusion is not, however, supported by medical evidence in the record. No provider suggested a relationship between Plaintiff's subjective findings of lower extremity weakness and ASPVD. In fact, in a follow-up visit, Dr. Michael D. Sellers of Norman Heart and Vascular Associates reviewed the results of the ultrasound with Plaintiff, noting no identifiable cause for her ASPVD. He also noted that because Plaintiff's symptoms were "tolerable at this time" he would "continue with medical treatment" rather than proceed with an angiogram as a means to determine the exact extent of the peripheral disease. AR. 376.

At the consultative examination, Plaintiff did not complain of lower extremity weakness, that is, the inability to stand. AR 420. Her musculoskeletal complaints were limited to chronic back pain, joint stiffness and swelling in hands and feet. AR 421. Dr. Jack B. Howard, the consultative examiner, reported his findings upon examination of Plaintiff's extremities:

> No cyanosis or digital clubbing is noted. No varicosities are noted. No point
> tenderness is noted during the evaluation. Peripheral pulses are adequate in all

> extremities. Grip strength is 5/5 bilaterally strong and firm. She is able to perform both gross and fine tactile manipulation with hands with minimal pain. Finger to thumb opposition is adequate. Knees showed no effusion or edema and were stable in all range of motion exercises. Great toe strength is adequate bilaterally. Leg lengths, including calf and thigh circumferences, are equal bilaterally.

AR 422. Dr. Howard described Plaintiff's gait as "antalgic, steppage wide-based, safe and stable with appropriate speed." AR 423. He noted she did not use an assistive device for walking. *Id.*

In sum, the ALJ's physical RFC determination is supported by substantial evidence in the record as a whole. Plaintiff's challenges to the ALJ's physical RFC determination are without merit and do not warrant reversal and remand.

**B.     The ALJ's Mental RFC Determination**

Plaintiff's challenge to the ALJ's mental RFC is based solely on the ALJ having limited Plaintiff to simple, unskilled work to account for her alleged depression. [Doc. No. 12] at 9-14. As discussed in further detail below, the ALJ's mental RFC is supported by substantial evidence in the record. The ALJ's mental RFC limiting Plaintiff to simple, unskilled work adequately accounted for the "moderate" impairments in concentration, persistence and pace he assessed at step three of the sequential evaluation.

Plaintiff reported a long history of depression to the consultative physician, Dr. Parind Shah, M.D. AR 431-432. But other than episodic reports of depression during examinations for physical problems, the record is devoid of objective medical evidence to support her subjective allegations. Plaintiff told Dr. Shah she had had no mental health hospitalizations and that medication helped her depression when she took such medication. AR 431. Although Plaintiff was tearful during the examination, Dr. Shah found her pleasant and cooperative with good grooming and hygiene. Her eye contact was good, and her speech was goal directed and non-pressured. *Id.*

On examination, she was able to recall three objects immediately and after five minutes. She performed serial three's from one hundred without difficulty, identified two presidents before President Obama and counted backwards from twenty. Dr. Shah assessed her abstract reasoning and judgment as acceptable and adequate. *Id.*

Dr. Shah found Plaintiff's symptoms were likely to improve within the next twelve months and found her capable of managing her own funds. Dr. Shah concluded by assessing Plaintiff's depression as "moderate to severe secondary to psychosocial as well as environmental stressors." AR 432.

At step three of the sequential evaluation, the ALJ considered Listing 12.04 to determine whether Plaintiff's affective disorder met or equaled a listed impairment. AR 14. As required by the regulations, the ALJ considered the "Part B" criteria and rated the effects of depression on Plaintiff's concentration, persistence and pace as "moderate," a more restrictive finding than that of the consultative examiner, but insufficient to meet Listing 12.04. AR 14.

Plaintiff contends a mental RFC limiting a claimant to simple, unskilled work cannot adequately accommodate a claimant's moderate limitations in concentration, persistence and pace. [Doc. No. 12] at 10. Plaintiff relies on unpublished cases for this proposition of error.[2] Plaintiff would have this Court believe these unpublished decisions created a hard and fast rule that mental impairments can *never* be accommodated by a reduction in skill level. But such is not the state of Tenth Circuit law.

---

[2] *See Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting difference in skill level and mental functioning); *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012) (recognizing that restrictions to unskilled jobs do not, in all instances, account for the effects of mental impairments); and *Wayland v. Chater*, 1996 WL 50459 at *2 (10th Cir. Feb. 7, 1996) (recognizing that a deficiency in the ability to concentrate may not always be accommodated by a reduction in skill level, but that some mental limitations could be so accommodated).

In a more recent published opinion, the Tenth Circuit held that an ALJ's RFC determination, limiting a claimant to unskilled work, adequately accounted for his moderate limitations in concentration, persistence and pace, assessed at step three of the sequential evaluation. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). In *Vigil*, the ALJ concluded, after considering the "Part B" criteria for affective disorders at step three of the sequential evaluation, that the claimant had moderate limitations in concentration, persistence and pace. To accommodate the moderate limitation, the ALJ limited the claimant to unskilled work in the RFC formulation. *Id.* at 1203-1204. The Tenth Circuit noted an ALJ's findings regarding the "Part B" criteria are used for the limited purposes of determining whether a mental impairment is severe and whether a claimant's mental impairment meets the criteria of a listed impairment; the finding is *not* a mental RFC determination. *Id. See also Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) (an ALJ can account for moderate mental limitations by limiting the claimant to particular kinds of work activity); *Richards v. Colvin*, 640 F. App'x 786, 788 (10th Cir. 2016) (limitation to unskilled work can adequately account for a claimant's mental impairments, depending on their nature).

In this case, the ALJ considered and discussed Plaintiff's possible mental limitations. The ALJ noted particularly the Plaintiff's own allegations, including the wide variety of activities in which she participates without assistance, her ability to take medication without reminders, her ability to get along with others, and her lack of problems with paying attention and following directions. AR 15.

Finally, an important consideration in *Wayland v. Chater*, 1996 WL 50459 (10th Cir. Feb. 7, 1996), a case cited by Plaintiff, was whether a deficit in concentration would disrupt production or be physically dangerous to the claimant or others. *Id.* at *2. Such concerns are not

applicable to the instant case; the jobs identified by the VE at step five, as described in the Dictionary of Occupational Titles (DOT), are not production jobs and do not require activities in which Plaintiff would be likely to distract others or be a danger to herself or others. *See* DOT 239.567-010, 1991 WL 627732 (Office Helper-Clerical); DOT 589.685-038, 1991 WL 684490 (Laundry Worker–Dry Cleaner); DOT 241.367-038, 1991 WL 672258 (Inventory Reviewer— Dealer Account Investigator). Thus, in this case, the ALJ adequately accounted for any functional limitations caused by Plaintiff's depression by limiting her to simple, unskilled work.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the ALJ's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by December 27, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 13th day of December, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE